NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1158-18T1

K.K-M., on behalf of minor
children, A.W. and R.M.,

      Petitioners-Appellants,

v.

BOARD OF EDUCATION OF
THE CITY OF GLOUCESTER
CITY, CAMDEN COUNTY,

      Respondent-Respondent.

_____

APPROVED FOR PUBLICATION

March 10, 2020

APPELLATE DIVISION

Submitted February 5, 2020 – Decided March 10, 2020

Before Judges Koblitz, Gooden Brown and Mawla.

On appeal from the New Jersey Commissioner of Education, Docket No. 18-1/18.

Thurston Law Offices LLC, attorneys for appellants (Robert C. Thurston, on the brief).

Parker McCay, PA, attorneys for respondent Gloucester City Board of Education (Andrew Wei Li, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Donna Arons, Assistant Attorney General, of counsel; Joan M. Scatton, Deputy Attorney General, on the statement in lieu of brief).

The opinion of the court was delivered by

KOBLITZ, P.J.A.D.

Petitioner K.K-M.,[1] the kinship legal guardian of A.W. and R.M., appeals from the Commissioner of Education's October 4, 2018 final decision that the children must transfer to her school district. Because the Kinship Legal Guardianship Act (Act), N.J.S.A. 3B:12A-1 to -7, provides a permanent home for children, we affirm. The children must go to school where their kinship legal guardian lives.

Petitioner argues on appeal that the Commissioner misinterpreted N.J.S.A. 30:4C-26, N.J.S.A. 18A:7B-12(a)(2) (together, educational stability law), the Act, and the federal Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 to 1482, when he concluded that, upon petitioner's grant of Kinship Legal Guardianship (KLG), A.W. and R.M. could no longer attend the school where their biological mother resided. The statutory language relied on by petitioner applied only during the Division of Child Protection and Permanency's (Division) placement of A.W. and R.M. in a resource family home. The Commissioner properly concluded that once petitioner obtained

---

[1] We use initials pursuant to Rule 1:38-3(d)(12) to preserve the confidentiality of the children.

KLG status, the children were no longer eligible to remain in the Gloucester City (GC) schools where their biological mother lived.

A.W. and R.M. were registered in the GC School District during the 2013–14 school year. At that time, the children lived with their birth mother in GC. In October 2014, the Division temporarily placed A.W. and R.M. with petitioner, a resource family parent, in Laurel Springs. See N.J.S.A. 30:4C-26.1. The children were returned to their birth mother in December 2014. On September 11, 2015, the Division placed A.W. and R.M. again with petitioner, where they remain.

In August 2016, about one year later, the Division informed the GC schools that after an "education stability assessment," the Division determined that the children should remain in the GC schools. The children stayed for the 2016–17 school year. A May 16, 2017 court order awarded petitioner KLG of the two children.

Relying on the Division's information that the educational stability law no longer applied after petitioner gained permanent legal custody of the children, the GC Superintendent informed petitioner in October 2017 that the children should be enrolled in the Laurel Springs School District, where their kinship legal guardian lived.

Petitioner appealed administratively. The Administrative Law Judge (ALJ) issued an initial decision granting the Board of Education of the City of GC's (GC Board) cross-motion for summary decision. The ALJ determined that "A.W. and R.M. are no longer entitled to an education in the [GC] School District because they live with K.K-M., their legal guardian, outside of Gloucester and are no longer foster children." Citing N.J.A.C. 6A:22-3.1(a)(1), the ALJ stated that "[a] student's right to attend school free of charge in a district derives from that student's domicile together with a parent or legal guardian." She further stated that KLG "is a permanent status on par in most regards with the rights and obligations of a parent." Once petitioner was granted KLG, "her residence became A.W. and R.M.'s domicile for the purposes of school attendance."

The Commissioner adopted the ALJ's recommendation to grant summary decision in favor of the GC Board. The Commissioner found that while a KLG order does not terminate parental rights, "it does transfer a child's care, custody and legal guardianship to the [kinship legal guardian], which far exceeds the scope of a foster or resource family home placement." The Commissioner stated that "it is not necessary to conduct a best interests determination, as the child's

4

domicile for the purposes of schooling is the school district of the [kinship legal guardian]."

We are not "bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Ardan v. Bd. of Review, 231 N.J. 589, 604 (2018) (quoting US Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012)). "Because an agency's determination on summary decision is a legal determination, our review is de novo." L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 204 (2015). Summary decision in an administrative proceeding is appropriate when "the papers and discovery which have been filed, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law." N.J.A.C. 1:1-12.5(b).

## I. Best Interest Determination.

In August 2016, when petitioner was the resource family parent for the children, the Division conducted an "education stability assessment," or "best interest determination," pursuant to N.J.S.A. 30:4C-26b, and determined that A.W. and R.M. should remain at their current school in GC. Petitioner argues that this determination was conclusive, citing to N.J.S.A. 30:4C-26b(d), and

thus, the GC Board should not have revoked the children's enrollment once she was granted KLG status.

Under N.J.S.A. 30:4C-26(a), the Division has the authority to place a child whose "needs cannot be adequately met in his [or her] own home" in a resource family home. Within five business days of placement in a resource family home, the Division is then required to make a best interest determination "whether the presumption that the child continue to attend the school that the child currently attends is outweighed by the best interest factors supporting placement in the school district in which the resource family home is located." N.J.S.A. 30:4C-26b(c). "If the [D]ivision's determination is consistent with the presumption . . . the determination shall be deemed conclusive at the time the determination is made." N.J.S.A. 30:4C-26b(d). "If the [D]ivision's determination . . . is that it is in the best interest of the child to enroll the child in the school district in which the resource family home is located, the determination shall remain preliminary pending the completion of the requirements of this subsection." N.J.S.A. 30:4C-26b(d). "Any party" may seek review of this preliminary determination within five days of the Division providing "written notice to the child's law guardian and a parent or legal guardian of the child." N.J.S.A. 30:4C-26b(d)(1), (2). If

A-1158-18T1

review is not sought, the determination becomes conclusive.  N.J.S.A. 30:4C-26b(d)(2).

In making a best interest determination, the Division and the court "shall consider" the following factors:

(1) safety considerations;

(2) the proximity of the resource family home to the child's present school;

(3) the age and grade level of the child as it relates to the other best interest factors listed in this subsection;

(4) the needs of the child, including social adjustment and wellbeing;

(5) the child's preference;

(6) the child's performance, continuity of education, and engagement in the school the child presently attends;

(7) the child's special education programming if the child is classified;

(8) the point of time in the school year;

(9) the child's permanency goal and the likelihood of reunification;

(10) the anticipated duration of the current placement; and

(11) such other factors as provided by regulation of the Commission of Children and Families.

A-1158-18T1

[N.J.S.A. 30:4C-26b(f)(1)-(11).]

The Division determined the presumption of continuing in the same school was not outweighed by the best interest factors and the children continued their enrollment in GC for the 2016–17 school year. It was not until after petitioner's status changed from resource family parent to KLG in May 2017 that the GC Board sought disenrollment of A.W. and R.M. from its schools.

Petitioner is correct that the determination that A.W. and R.M. will remain in the GC schools was conclusive during their placement in a resource family home. The statute does not, however, support petitioner's assertion that this determination remains conclusive once petitioner has obtained KLG status, just as it would not remain if the children were adopted.

As the Commissioner pointed out, a board of education is "entitled to initiate the procedures for disenrollment" once a student is found to be ineligible. N.J.A.C. 6A:22-4.3(a) provides that a district board of education is not precluded "from identifying through further investigation or periodic requests for revalidation of eligibility, students enrolled in the school district who may be ineligible for continued attendance due to error in initial assessment, changed circumstances, or newly discovered information." A.W. and R.M. were deemed ineligible once petitioner was granted KLG status. Petitioner does not offer any

8

support for her argument that the GC Board had to initiate proceedings sooner once they found out petitioner was granted KLG.

A "resource family home" is defined as "a private residence, other than a children's group home or shelter home, in which board, lodging, care, and temporary out-of-home placement services are provided by a resource family parent on a [twenty-four] hour basis to a child under the auspices of the [D]ivision." N.J.S.A. 30:4C-27.5 (emphasis added). A best interest determination is made during a child's placement in a resource family home, which by definition is temporary. Once petitioner was granted KLG, the children were no longer temporarily placed in a resource family home. Instead, they were permanently placed with petitioner as the kinship legal guardian.

## II. KLG.

N.J.S.A. 18A:38-1(a) mandates that public schools are free to any person, under twenty years of age, "who is domiciled within the school district." "A student is domiciled in the school district when he or she is the child of a parent or guardian whose domicile is located within the school district." N.J.A.C. 6A:22-3.1(a)(1) (emphasis added).

Petitioner asserts that her KLG status "does not limit or terminate any rights or benefits derived from the child's parents," which includes the right to

9

attend school where A.W. and R.M.'s birth mother resides. She argues that "KLG status is temporary," citing to N.J.S.A. 3B:12A-4(a)(6), which states that "[KLG] terminates when the child reaches [eighteen] years of age or when the child is no longer continuously enrolled in a secondary education program, whichever event occurs later, or when [KLG] is otherwise terminated." Petitioner argues that if her KLG status terminates prior to A.W. and R.M. turning eighteen, the children would either return to their birth mother in GC or be placed with another resource family in a different school district, requiring further educational disruption.

In enacting the Act, the Legislature stated:

> [I]t is imperative that the State create an alternative, _permanent_ legal arrangement for children and their caregivers. One such alternative arrangement, which does not require the termination of parental rights, is a court awarded [KLG] that is intended to be _permanent_ and self-sustaining, as evidenced by the transfer to the caregiver of certain parental rights, but retains the birth parents' rights to consent to adoption, the obligation to pay child support, and the parents' right to have some ongoing contact with the child.
>
> [N.J.S.A. 3B:12A-1(b) (emphasis added).]

A kinship legal guardian is defined as "a caregiver who is willing to assume care of a child due to parental incapacity, with the intent to raise the child to adulthood" and is "responsible for the care and protection of the child

10

and for providing for the child's health, education and maintenance."  N.J.S.A.

3B:12A-2.  The Act further states:

> [A] kinship legal guardian shall have the same rights, responsibilities and authority relating to the child as a birth parent, including, but not limited to: making decisions concerning the child's care and well-being; consenting to routine and emergency medical and mental health needs; arranging and consenting to educational plans for the child; applying for financial assistance and social services for which the child is eligible; applying for a motor vehicle operator's license; applying for admission to college; responsibility for activities necessary to ensure the child's safety, <u>permanency</u> and well-being; and ensuring the maintenance and protection of the child.
>
> [N.J.S.A. 3B:12A-4(a)(1) (emphasis added).]

Petitioner's argument that KLG status is "temporary" is incorrect.

## III. <u>IDEA.</u>

Under the federal IDEA, 20 U.S.C. §§ 1400 to 1482, A.W. and R.M., as children with disabilities who have individualized education plans (IEP), are guaranteed a free appropriate public education from their public school if that school receives federal funding.  Petitioner cites to the "stay put" rule under the IDEA, which requires a child with a disability to remain in their then-current educational placement "during the pendency of <u>any proceedings conducted pursuant to this section</u>, unless the State or local educational agency and the

11

<span style="float:right">A-1158-18T1</span>

parents otherwise agree." 20 U.S.C. § 1415(j) (emphasis added). Petitioner argues that if A.W. and R.M. are transferred to the Laurel Springs School District, it is not known whether the new district will have the services to meet the needs of the children.

As the Commissioner found, the "stay put" provision under the IDEA does not apply to proceedings involving a residency determination. The transfer of A.W. and R.M. to Laurel Springs is appropriate because it is the district of residence of their kinship legal guardian. The IDEA provides for the implementation of an IEP when the child is transferred to another school district within the state. 20 U.S.C. § 1414(d)(2)(C)(i)(I) states:

> In the case of a child with a disability who transfers school districts within the same academic year, who enrolls in a new school, and who had an IEP that was in effect in the same State, the local educational agency shall provide such child with a free appropriate public education, including services comparable to those described in the previously held IEP, in consultation with the parents until such time as the local educational agency adopts the previously held IEP or develops, adopts, and implements a new IEP that is consistent with Federal and State law.

If the new school district fails to provide comparable services, petitioner may assert a claim under the IDEA.

A-1158-18T1

Petitioner's procedural objections to granting summary disposition are without sufficient merit to require discussion in a written opinion.  R. 2:11-3(e)(1)(E).  KLG is a permanent status requiring children to attend school in the district where their kinship legal guardian lives.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION