**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2428-17T2

MICHAEL BARRY,

     Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT
OF ENVIRONMENTAL
PROTECTION, LAND USE
REGULATION,

     Respondent-Respondent.

_____

Submitted January 15, 2019 – Decided August 6, 2019

Before Judges Suter and Geiger.

On appeal from the New Jersey Department of Environmental Protection.

Connell Foley LLP, attorneys for appellant (Kevin J. Coakley, of counsel; Ryan Andrew Benson, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jennifer Lauren Moriarty, Deputy Attorney General, on the brief).

PER CURIAM

Michael Barry (petitioner) appeals a final decision by the Commissioner of the Department of Environmental Protection (DEP) that dismissed his administrative appeal of a Coastal Area Facility Review Act (CAFRA)[1] permit. We review this matter de novo and conclude that the Commissioner's decision was consistent with applicable regulations.

In 2011, petitioner applied to DEP for a CAFRA permit to reconstruct and expand his existing single-family dwelling located in Long Branch along the Atlantic Ocean. The application stated the proposed construction was located within "150 [feet] of the landward limit of the dune" and because it was landward of the dune, the "project [was] not subject to the policy of [the dune regulation]."

The dune regulation prohibited development on dunes except for development that had no "feasible alternative" and would not cause "significant adverse long-term impacts to the natural functioning of the beach and dune system . . . ." N.J.A.C. 7:7E-3.16(b).[2] Expansion or reconstruction of a single-family home must comply with the dune regulation. The regulation allowed exceptions if certain criteria were met, which included the recording of "[a]

_____

[1] N.J.S.A. 13:19-1 to -21.

[2] Amended by 47 N.J.R. 1392(a) (July 6, 2015).

2                                                                 A-2428-17T2

conservation restriction for the dune areas waterward of the existing and/or approved single-family home or duplex and/or accessory development . . . ." N.J.A.C. 7:7-7.9(d).[3]

Following a site inspection of the property, DEP advised petitioner to modify his plan so that it complied with the dune regulation because "the entire site is a dune." DEP then issued a permit in November 2011 that allowed petitioner to demolish and rebuild the house subject to conditions.

Administrative Condition Two (Condition Two) provided, "Acceptance of permit: If you begin any activity approved by this permit, you thereby accept this document in its entirety, and the responsibility to comply with the terms and conditions. If you do not accept or agree with this document in its entirety, do not begin construction." General Condition Three required the construction to comply with the plans that were submitted and "said conditions." Administrative Condition Four (Condition Four) provided:

> [p]rior to site preparation, a conservation restriction for the area westward of the eastern façade of the proposed single[-]family home . . . shall be RECORDED with the Office of the County Clerk . . . in the county wherein the lands included in this permit are located. The conservation restriction for dune areas shall reflect exactly what is provided on the Division's web site . . . and must accompany and reference a site plan, with all

---

[3] Amended by 47 N.J.R. 1392(a) (July 6, 2015).

> restricted areas clearly delineated . . . . Said restriction shall run with the land and be binding upon all successive owners.

Petitioner took the position that the area from the house to the municipal building line was not part of a dune and should not be subject to the conservation restriction required by Condition Four. He was willing to record a conservation restriction that was smaller in area. Although DEP personnel suggested another site inspection could be conducted, that did not occur, and the issue about the scope of the restriction was not resolved.

On March 6, 2012, petitioner took two actions. He filed a request for an administrative hearing with DEP's Office of Legal Affairs, challenging the permit's conservation restriction requirement. He argued Condition Four was erroneous and overbroad because "the dune on the property ends east of the [b]uilding [l]ine of the property, and does not extend further west to the façade of the proposed development."[4]

Petitioner's second action was to notify DEP's Bureau of Coastal Regulation that he would be recording a conservation restriction in the form required by DEP and a deed memorializing the permit conditions. The letter

---

[4] On July 31, 2012, DEP advised the matter would be transmitted to the Office of Administrative Law (OAL) for a hearing.

A-2428-17T2

noted that he would be asking for an administrative hearing to challenge the scope of the conservation restriction.

Petitioner recorded the conservation restriction on April 5, 2012. It conveyed a conservation restriction to DEP that was consistent with the permit. The recorded conservation restriction provided that this was "the entire agreement of the parties . . . and superseded all prior discussions, negotiations, understandings or agreements relative to the easement . . . ." It also provided the "Grant of Conservation Restriction/Easement may only be removed pursuant to N.J.S.A. 13:8B-1 [to -9]." Petitioner commenced reconstruction of the house in the fall of 2012, and it now is completed.

Petitioner's hearing request was transmitted to the OAL in February 2014.[5] A year later following discovery, DEP filed a motion for summary decision. DEP argued that under Condition Two, petitioner accepted all the conditions of the permit once he commenced construction. This included Condition Four relating to the conservation restriction. Also, because the conservation restriction was recorded, DEP argued the only way for petitioner to modify or release it would be to comply with the Conservation Restriction and Historic

---

[5] The reason for the delay was not explained.

Preservation Restriction Act (CRHPA),[6] and the procedures that it required, including a public hearing.

Petitioner opposed the motion, arguing that he acted in good faith by requesting a hearing and by completing construction in conformity with the terms of the permit. He claimed the construction took place entirely outside of the area restricted by the conservation easement. He disagreed with the scope of the conservation restriction. He argued the OAL had authority to resolve whether the permit's conservation restriction was overbroad.

In the Initial Decision issued two years later, the Administrative Law Judge (ALJ) granted DEP's motion for summary decision, concluding that petitioner forfeited his right to object to Condition Four "once he began construction on the new house." Also, because of the CRHPA, the OAL could not release the conservation restriction without the approval of the DEP Commissioner. The ALJ cited Lynch v. California Coastal Comm'n, 3 Cal. 5th 470 (2017), for the proposition that petitioner forfeited his right to proceed.

On December 21, 2017, the Commissioner's final decision adopted the Initial Decision and dismissed petitioner's case. The final decision concluded that petitioner's challenge failed because he "effectively accepted the permit by

---

[6] N.J.S.A. 13:8B-1 to -9.

commencing and completing construction in compliance with it." Under the regulations, if a hearing was requested on the permit, construction was not to commence until the issues were resolved. The purpose of the regulation was to promptly resolve disputes. The final decision provided that because "[p]etitioner received the full benefits of the permit, he [could] not now challenge the permit condition requiring the conservation restriction . . . ." This did not preclude petitioner from seeking a "release or modification" under the [CRHPA], but the final decision noted this required a public hearing and consideration of the public's interest.

On appeal, petitioner claims he did not forfeit his right to challenge Condition Four by starting work on the house, rather than waiting years for a decision, because he complied with all of the permit conditions. He complains that Condition Four should not have been imposed; it was arbitrary, capricious and unreasonable, violated legislative policies and was not supported by credible evidence. He also argues the CRHPA did not prevent the OAL from hearing his case.

We review an agency's summary decision de novo because it is a legal determination. L.A. v. Bd. of Educ. of City of Trenton, 221 N.J. 192, 204 (2015) (citing Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121-22 (App.

Div. 1995)).  We are not "bound by [an] agency's interpretation of a statute or its decision on a strictly legal issue."  Ibid. (alteration in original) (quoting Dep't of Children & Families, N.J. Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 302 (2011)).

The standard governing an agency's summary decision under N.J.A.C. 1:1-12.5 is "substantially the same as that governing a motion under Rule 4:46-2 for summary judgment in civil litigation."  Id. at 203 (quoting Contini, 286 N.J. Super. at 121-22).  Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c); accord Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"CAFRA grants broad authority to the DEP to protect the environment and to regulate land use within the coastal area for the general welfare."  In re Cape May Cty. Mun. Utils. Auth., 242 N.J. Super. 509, 514 (App. Div. 1990) (citing In re Egg Harbor Assocs. (Bayshore Centre), 94 N.J. 358, 364 (1983); Crema v. N.J. Dep't of Envtl. Prot., 94 N.J. 286 (1983)).  "The primary purpose of CAFRA is to protect the unique and fragile coastal zones of the State."  In re

Egg Harbor Assocs., 94 N.J. at 364 (alteration in original) (quoting N.J.S.A. 13:19-2). "[T]he Legislature has granted DEP substantial authority to regulate development in the coastal area including the authority to grant a permit subject to conditions found to be 'reasonably necessary to promote the public health, safety and welfare . . . and to preserve, protect and enhance the natural environment.'" In re Cape May, 242 N.J. Super. at 512 (alteration in original) (quoting In re Egg Harbor Assocs., 94 N.J. at 364).

We agree with the final decision that petitioner waived his ability to challenge the permit conditions because, under the permit and the regulations in effect at the time, he accepted the conditions by proceeding with construction. The regulations provide that if a hearing is requested "the operation of the permit or authorization shall be automatically stayed in its entirety . . . . All permitted activities shall stop . . . and shall not be started again until the matter is resolved, unless the Department grants an exception in writing." N.J.A.C. 7:7-28.3(a).[7] When this regulation was proposed, DEP stated that it was to "prevent[] a permittee from undertaking activities while permit conditions, which are

---

[7] DEP had a similar regulation prior to July 2015. The former regulation, N.J.A.C. 7:7-5.1(d), stated that "[i]f a permittee submits a hearing request contesting any condition of a permit, construction shall not commence until the adjudicatory hearing is resolved, unless the commissioner issues a stay of condition pursuant to N.J.A.C. 7:7-5.3(c)." 47 N.J.R. 1392(a) (July 6, 2015).

A-2428-17T2

integral to the Department's finding that the permit application meets the standard for approval under the rules, are contested."  46 N.J.R. 1051(a) (June 2, 2014). The permit issued to petitioner reiterated the same condition: if petitioner proceeded with construction, he was accepting all the terms of the permit.

It was reasonable for DEP to want to resolve objections to permit conditions prior to construction.  DEP's regulation stays the permit if a hearing is requested so that objections to the conditions can be resolved before construction.

Petitioner does not claim that he lacked notice his conduct would constitute acceptance of the permit.  Instead, he tried to preserve his options by filing a hearing request and then shortly after, proceeding with construction. This is not what the permit or the regulations allowed.

Petitioner did not request a stay of the conditions in the permit.  We reject petitioner's argument that his correspondence with DEP employees was a stay request.  The letters did not even make reference to a stay.  He did not file a stay request with the Commissioner.  DEP was not required to request a stay because the regulation provided that construction would be stayed until the issues were resolved.  See N.J.A.C. 7:7-28.3(a).

Petitioner is incorrect that it was DEP's responsibility to tell him he "would need to file something more formal and/or receive approval before proceeding with construction." Under the current regulation, the permit is automatically stayed once a hearing is requested. N.J.A.C. 7:7-28.3(a). The former regulation, N.J.A.C. 7:7-5.1(d), was clear that "construction shall not commence until the adjudicatory hearing is resolved, unless the Commissioner issues a stay of the condition."

Petitioner argues that Condition Four was not an integral part of the permit but there was nothing in the regulation nor the permit that limited the conditions to "integral" provisions. Also, a condition that related to the extent of a dune was plainly integral because the purpose of a conservation restriction is to protect dune areas by "retaining land or water areas predominantly in their natural state . . . [and] forbid[ding] or limit[ing] any . . . acts or uses detrimental to the retention of land or water areas . . . ." N.J.A.C. 7:7-1.5; see also N.J.S.A. 13:19-2.

We are not persuaded by petitioner's argument that the final decision erred by citing Lynch, 3 Cal. 5th at 470. The final decision did not rely on that case for authority but cited it merely to "illuminate[] the rationale that the Department provided when it promulgated the rule regarding acceptance of a permit . . . ."

The condition in the permit that required a conservation restriction was not violative of legislative policies. A conservation restriction is authorized by N.J.S.A. 13:8B-2. We have no occasion to resolve whether DEP's conclusion about the extent of the dune was arbitrary, capricious or unreasonable or supported by credible evidence because petitioner accepted the terms of the permit by proceeding with construction and in doing so accepted the conservation restriction.

Petitioner raises for the first time on appeal that the conservation restriction constitutes an unconstitutional taking under the Fifth Amendment of the United States Constitution. We decline to consider questions that were not presented to the Commissioner. See In re Stream Encroachment Permit, Permit No. 0200-04-0002.1 FHA, 403 N.J. Super. 587, 602 (App. Div. 2008) (citing Bryan v. Dep't of Corr., 258 N.J. Super. 546, 548 (App. Div. 1992)).

The conservation restriction expressly provided that its revocation was subject to the provisions of the CRHPA. The final decision made clear that petitioner is not precluded from seeking a modification or revocation of the conservation restriction under provisions of the CRHPA.[8] We agree with the

---

[8] DEP's brief advised that petitioner has filed this application.

final decision that dismissed petitioner's case because he accepted the permit conditions when he proceeded with construction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2428-17T2